IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| EZE Management Properties Limited Partnership, a South Carolina Limited Partnership, | ) ) ) C.A. No. 6:05-1853-HMH ) |
| Plaintiff, | ) ) **OPINION AND ORDER** |
| vs. | ) ) |
| NALCO Company, | ) ) |
| Defendant. | ) |

This matter is before the court on cross-motions for partial summary judgment. For the reasons stated below, the court grants in part and denies in part NALCO Company's ("Nalco") motion for partial summary judgment and grants in part and denies in part EZE Management Properties Limited Partnership's ("EZE") motion for partial summary judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On December 1, 1994, EZE entered into a lease contract ("lease") with Calgon Incorporated ("Calgon") to lease EZE's property located at 604 High Tech Court in Greer, South Carolina ("Property"), for use as an office/warehouse/manufacturing facility. (Compl. ¶ 3.) In 2000, Calgon and Nalco merged, and Nalco assumed Calgon's obligations under the lease. (Id. ¶ 4; Def.'s Mem. Supp. Summ. J. 4.) The lease term expired at midnight on November 30, 2004. (Def.'s Mem. Supp. Summ. J. Ex. 1 (Lease at 1).)

In 2000, Nalco contacted Earth Tech, Inc. ("Earth Tech") to monitor the Property's groundwater for the presence of hazardous materials. (Def.'s Mem. Supp. Summ. J. 4.) Nalco obtained permission from the South Carolina Department of Health and Environmental

1

Control ("DHEC") to have Earth Tech install and monitor wells on the Property.  (Id.)  Earth Tech installed five wells, designated MW-1 through MW-5.  (Id. 4-5.)  Testing at the wells revealed the presence of volatile organic compounds, of which the concentration of 1,1-dichloroethene ("DCE") exceeded the federal maximum contaminant level and the South Carolina Water Classification Standards.  (Id. & Ex. 9 (Final Investigation Report at 4).)  After reviewing the test results, DHEC required Nalco to continue testing the groundwater on the Property on a quarterly basis.  (Id. Ex. 11 (Letter from Bruce Crawford to Karen Stadnik of 4/4/2001).)  On June 10, 2002, DHEC notified Nalco that the unacceptable levels of DCE was limited to wells MW-3 and MW-4, and the remaining three wells were to be abandoned in accordance with DHEC regulations.  (Id. Ex. 14 (Letter from Michael Rivers to Scott Lundin of 6/10/2002).)

On December 1, 2004, Nalco informed DHEC that it would no longer be responsible for financing the monitoring activities of the wells due to the end of the lease term.  (Compl. ¶¶ 28-29.)  Only after the lease expired did EZE learn that Nalco had employed Earth Tech to install the five monitoring wells, that DHEC had directed Nalco to continue monitoring two of the wells, or that the groundwater contained unacceptable levels of DCE.  (Compl. ¶¶ 19, 22, 30.)

EZE contacted DHEC on February 18, 2005, requesting that DHEC lift the semi-annual monitoring requirement of the two remaining active wells.  (Id. ¶ 31.)  DHEC denied the request on March 1, 2005.  (Id. ¶ 32.)  EZE asked DHEC to reconsider its decision and to specify that Nalco, not EZE, was responsible for the monitoring costs on April 4, 2005.  (Id. ¶ 33.)  In response, DHEC stated that EZE, as the owner of the Property, was ultimately

responsible for the monitoring costs, but that monitoring would only be required at the MW-3 location until the DCE levels were at an acceptable level. (Id. ¶ 34.) On September 22, 2005, DHEC gave EZE permission to close and abandon the last well, and, on November 4, 2005, EZE paid to have the wells closed and abandoned in compliance with DHEC regulations. (Pl.'s Mem. Supp. Summ. J. 5; Def.'s Mem. Supp. Summ. J. Ex. 3 (Rushing Dep. at 35).)

On May 25, 2005, EZE brought suit in the South Carolina Court of Common Pleas for the Thirteenth Circuit in Greenville, South Carolina. Nalco removed the case to this court on June 27, 2005.

In its complaint, EZE states five causes of action against Nalco, all concerning the monitoring wells and the presence of DCE in the groundwater. First, EZE alleges that the lease terms required Nalco to "notify Plaintiff if it intended to use, store, handle, dispose, treat, discharge, release or process any 'Hazardous Material' on the leased premises," and that Nalco failed to notify EZE of its intent to do so ("Failure to Notify Claim").[1] (Compl. ¶¶ 10, 11.) Second, EZE contends that Nalco breached the lease ("Breach of Lease Claim"), in six particulars:

> [1] by failing to notify Plaintiff of the presence of hazardous materials in the groundwater of premises after such presence became known to NALCO; [2] by seeking permits to install monitoring wells without notifying Plaintiff of its intention to do so; [3] by installing said monitoring wells without seeking or

---

[1] EZE only enumerated four causes of action in its complaint and did not list the Failure to Notify Claim as one of them. Rather, this allegation was contained in the section of the complaint which preceded EZE's "First Cause of Action." (Compl. 5.) However, because Nalco specifically moved for summary judgment on this allegation, the court is addressing it as if it were listed as a separate cause of action.

3

       obtaining permission of Plaintiff; [4] by failing to restore the leased premises to their original condition upon vacating the leased premises; [5] by installing unauthorized improvements or alterations on the property which caused the property to decrease in value; and [6] by failing and refusing to comply with DHEC regulations concerning abandoning and filling the wells which were no longer being monitored.

(Compl. ¶ 37.) Third, EZE alleges that Nalco breached the contract by failing to vacate the premises prior to the termination of the lease by leaving the monitoring wells on the Property ("Holdover Claim"). (Compl. ¶ 40.) As such, EZE alleges that Nalco is a holdover tenant and is liable under the terms of the lease to pay EZE 1.5 times the monthly rental in effect at the end of the lease term.

      EZE's fourth cause of action against Nalco is for indemnification ("Indemnification Claim"). EZE contends that Nalco is obligated to "indemnify and hold harmless the Plaintiff for any costs, fees, expenses, fines or decrease in value of the leased premises resulting from any environmental contamination of the leased premises during the term of the Lease." (Compl. ¶ 47.) EZE argues that Nalco has not indemnified EZE for the costs, fees, expenses, fines, or decrease in value resulting from the contamination of the Property. (Id. 48.)

      EZE's final cause of action is for trespass ("Trespass Claim"), in which EZE alleges that Nalco's "constructing and maintaining the monitoring wells on the leased premises without the permission of the Plaintiff" and "failing to remove these unauthorized structures upon the termination of the Lease" constitute "a willful or negligent unauthorized invasion of the Plaintiff's property." (Id. 51.)

      On February 28, 2006, both Nalco and EZE filed motions for partial summary judgment. Likewise, on March 15, 2006, EZE filed its response in opposition to Nalco's

motion for partial summary judgment ("Nalco's Motion"), and Nalco filed its response in opposition to EZE's motion for partial summary judgment ("EZE's Motion"). Nalco replied in support of its motion on March 22, 2006, and EZE replied in support of its motion on March 28, 2006.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for

5

trial." Fed. R. Civ. P. 56(e). With respect to this burden, "it is the responsibility of the plaintiff, not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion." Malina v. Baltimore Gas & Elec. Co., 18 F.Supp. 2d 596, 604 (D. Md. 1998).

### B. Contract Interpretation

"If a contract's language is clear and capable of legal construction, this Court's function is to interpret its lawful meaning and the intent of the parties as found in the agreement." Gilbert v. Miller, 586 S.E.2d 861, 864 (S.C. Ct. App. 2003). "A clear and explicit contract must be construed according to the terms the parties have used, with the terms to be taken and understood in their plain, ordinary, and popular sense." Id. "Whether a contract's language is ambiguous is a question of law." Southern Atl. Fin. Servs. Inc. v. Middleton, 562 S.E.2d 482, 484 (S.C. Ct. App. 2002). "[A] contract is ambiguous only when it may fairly and reasonably be understood in more ways than one." Goldston v. State Farm Mut. Auto. Ins. Co., 584 S.E.2d 511, 518 (S.C. Ct. App. 2004) (internal quotation marks omitted). However, the interpretation of an ambiguous contract is a question of fact for the jury to determine. Southern Atl., 562 S.E.2d at 485.

### C. The Parties' Motions

Nalco moves for partial summary judgment on EZE's Failure to Notify, Indemnification, and Holdover Claims, and for a determination that EZE has suffered no

6

damages from Nalco's alleged actions with respect to the monitoring wells. EZE moves for summary judgment on its Breach of Lease and Holdover Claims.[2]

### 1. Failure to Notify Claim

Nalco first argues that EZE's Failure to Notify Claim is barred by the express terms of section 5.06 of the lease. In its complaint, EZE alleged that "[u]nder the terms of the Lease, NALCO was required to notify Plaintiff if it intended to use, store, dispose, treat, discharge, release or process any 'Hazardous Material' on the leased premises." (Compl. ¶ 10.) Further, EZE contended, "At no time during the term of the Lease did NALCO notify Plaintiff it intended to use, store, handle, dispose, treat, discharge, release or process any 'Hazardous Material' on the leased premises." (Id. ¶ 12.)

> Section 5.06 of the lease states, in relevant part, as follows:
>
> During the term of this Lease, neither Tenant nor any employees, agents, licensees, invitees, representatives, or any party whom Tenant permits to enter on the Demised Premises shall dispose any Hazardous Materials on the Demised Premises. During the term of this Lease, neither Tenant nor any employees, agents, licensees, invitees, representatives, or any party whom Tenant permits to enter on the Demised Premises shall use, handle, treat, or store any Hazardous Materials on the Demised Premises except as necessary in the ordinary course of Tenant's business . . . .

(Def.'s Mem. Supp. Summ. J. Ex. 1 (Lease § 5.06).) By its terms, this provision only applies to those hazardous materials for which Calgon or Nalco are responsible for bringing onto the Property. EZE has not contested Nalco's statement that the only hazardous materials

---

[2]In a footnote, Nalco states that it does not move for summary judgment with respect to EZE's Trespass or Breach of Lease Claims, yet it also asserts that "a judgment for Nalco on the claims at issue in this memorandum will eliminate the legal and factual bases for EZE's other claims." (Def.'s Mem. Supp. Summ. J. 2 n.1.)

7

at issue in this case are chlorinated solvents, which includes DCE. (Def.'s Mem. Supp. Summ. J. 11.) Because there is no evidence that either Calgon or Nalco used chlorinated solvents, Nalco argues that it is entitled to summary judgment on this claim. (Id.) The court agrees. EZE failed introduce evidence to rebut Nalco's argument that either Calgon or Nalco used chlorinated solvents or were otherwise responsible for the presence of chlorinated solvents on the Property. Accordingly, Nalco is entitled to summary judgment on EZE's Failure to Notify Claim.

### 2. Breach of Lease Claim

EZE moves for summary judgment on its Breach of Lease claim, asserting that the lease required Nalco to notify EZE of its intent to construct the wells before doing so, and that Nalco failed to obtain permission to install the wells. (EZE's Mot. 1; Mem. Supp. Summ. J. 2, 4.) Nalco has not contested EZE's argument that it breached the lease, but rather argues that EZE has failed to show how it was damaged from the alleged breach. (Def.'s Mem. Opp'n Summ. J. 8-9.)

As evidence of damages, EZE offers the affidavit of David Holcombe ("Holcombe"), who was seeking a site on behalf of Venture Tape Corporation ("Venture"). In his affidavit, Holcombe claimed that Venture initially rejected the Property due to the presence of the monitoring wells, but that, upon learning that the wells were being closed, began evaluating the Property as a site for Venture. (Pl.'s Reply Supp. Summ. J. Ex. 1 (Holcome Aff. 1).) Holcombe states that the site is well-suited for Venture's needs, "assuming issues involving transportation costs to [Venture's] other facilities can be resolved." (Id.) Accordingly, EZE has offered evidence confirming that at least one customer rejected the property on the basis

of the presence of the wells and would only consider the property once EZE confirmed that the wells were being closed.

Moreover, it is undisputed that EZE had to pay the costs of closing and abandoning the wells, three of which DHEC had instructed Nalco to close in 2002. Nalco asserts that "EZE seeks no recovery for any costs it incurred in monitoring or closing the wells, and, in any event, has been reimbursed for 60% of the costs so incurred." (Def.'s Mem. Opp'n Summ. J. 12.) While the records Nalco submitted to the court indicate that EZE has been reimbursed $4,370.46 for closing and abandoning three of the wells, one of the exhibits Nalco offered was an invoice from EZE to Nalco for $5,413.64 in connection with unreimbursed costs associated with abandoning the wells. (Id. Appx. 3 (Rushing Dep. Ex. 4 (Invoice)).) There is no evidence that Nalco paid that invoice. Hence, Nalco's claim that EZE does not seek to recover the costs to abandon the wells is without merit, and there is evidence that EZE has paid–and not been reimbursed–for all of the costs associated with monitoring and abandoning the wells. As such, there is evidence that EZE has sustained damages on its Breach of Lease Claim, and, accordingly, EZE is entitled to summary judgment on its Breach of Lease Claim.

### 3. Indemnity Claim

Nalco argues that it is entitled to summary judgment on the Indemnification Claim because the lease only holds Nalco responsible for contamination caused by Nalco or its predecessor, Calgon. Nalco has offered evidence that EZE's prior tenant, EZE Products, Inc. ("EZE Products"), used and manufactured chlorinated solvents or products, one of which could degrade into DCE, on the Property, and there is no evidence that either Calgon or Nalco ever or stored chlorinated solvents at the Property. (Def.'s Mem. Supp. Summ. J. 3.)

As such, Nalco moves for summary judgment on EZE's claim that Nalco has failed to indemnify Nalco under section 5.05(b) of the lease.

Section 5.05(b) of the lease states, in pertinent part, the following:

> Tenant hereby covenants and agrees to indemnify and hold Landlord harmless from and against any and all loss, injury or damage occurring in, on or about the Demised Premises during the Term of this Lease as a result of the use, storage, handling, disposal, treatment, discharge, release or processing of any "Hazardous Materials" (as defined in Section 5.06) hereof on the Demised Premises by Tenant, Tenant's agents, employees, licensees, invitees, representatives or by any parties whom Tenant permits to enter onto the Demised Premises. Tenant's indemnity shall extend to and cover any such losses, injuries and damages from any cause whatsoever.

(Def.'s Mem. Supp. Summ. J. Ex. 1 (Lease Agreement § 5.05(b)).) Moreover, Nalco argues that section 5.06 further supports the conclusion that the hazardous materials to which section 5.05(b) of the lease refers are those materials which Nalco or its agents or invitees are responsible for bringing to the Property, not those which were already present when the lease commenced.

In response, EZE argues that the evidence concerning the source of the DCE is speculative and inadmissible. (Pl.'s Resp. Opp'n Summ. J. 5.) Rather, EZE alleges that the source of the DCE is likely the sewer (which overflowed) or the nearby creek (which often flooded) located near the monitoring wells. (Id. 6.) However, EZE has presented no evidence that Calgon or Nalco were responsible for the presence of DCE on the Property.

EZE contends that the lease requires Nalco to indemnify EZE for handling hazardous substances, which includes the water samples extracted from the monitoring wells. (Id.) Moreover, EZE asserts that the lease's indemnity provisions require Nalco to indemnify EZE of "all losses associated with hazardous materials without reference to whether the landlord

10

violated some environmental law," and points to the provision in section 5.05(b) that "[Nalco]'s indemnity shall extend to and cover any such losses, injuries, and damages from any cause whatsoever." (Id.)

After careful review, the court concludes that section 5.05(b) requires Nalco to indemnify EZE only if it is responsible for the contamination of the Property. As there is no evidence that EZE was responsible for the contamination of the Property, Nalco is entitled to summary judgment on EZE's claim that Nalco breached the lease by failing to indemnify EZE under section 5.05(b) of the Lease.[3]

### 4. Holdover Claim

Both parties have moved for summary judgment on EZE's Holdover Claim. Under the terms of the lease, a holdover tenancy occurs

> [i]f Tenant remains in possession of the Demised Premises after expiration of the Term thereof, with Landlord's acquiescence and without any express agreement of the Landlord and Tenant, Tenant shall then be a tenant at will of the Landlord at one and one-half (1½) times the Monthly Rental in effect at the end of the Term hereof plus the payment of all Additional Rent as provided herein, and there shall be no extension or renewal of this lease by operation of law.

(Def.'s Mem. Supp. Summ. J. Ex. 1 (Lease Agreement § 12).)

EZE contends that after learning that the wells could not be immediately removed, it treated Nalco as a holdover tenant and regularly billed Nalco for lease payments. EZE

---

[3]EZE asserted in its response to Nalco's Motion that Nalco was also liable to EZE under section 5.05(a) of the Lease. In its reply, Nalco stated, "Although Nalco disputes that Plaintiff is entitled to indemnity under section 5.05(a), the fact remains that Nalco did not move for summary judgment on this issue. Plaintiff's arguments about section 5.05(a) therefore are irrelevant." (Def.'s Reply Supp. Summ. J. 5.) Moreover, EZE did not move for summary judgment on the Indemnification Claim. Hence, neither party has moved for summary judgment on Nalco's potential obligation to indemnify EZE under section 5.05(a).

11

submitted the affidavit of Richard Grant, EZE's controller, in which he listed the invoices, the dates, and the amounts EZE invoiced Nalco under the holdover provision of the lease. (Pl.'s Mem. Supp. Summ. J. Ex. 11 (Grant Aff. 1-2).) EZE began billing Nalco for holdover rent on April 14, 2005. (Id.)

EZE contends that it is entitled to summary judgment on the grounds that Nalco remained in possession of the property by leaving the wells on the Property. EZE cites Townsend v. Singleton, 183 S.E.2d 893 (1971), for the proposition that "[u]ntil a tenant removes its property from the leased premises it remains in possession of the property." (Id. 6.) However, Townsend is factually distinguishable. In Townsend, there is no question that the defendant continued to physically occupy the property. The defendant admitted to using the property for months for a manufacturing operation after the terms of the lease expired, leaving various machinery and production materials onsite. Townsend, 183 S.E.2d at 895-96. Moreover, the defendant admitted to his continued occupation, but contended that he was a tenant at will instead of a holdover tenant. Id. at 896-97.

In this case, it is undisputed that Nalco vacated the property to EZE's satisfaction–with the exception of leaving the wells. (Def.'s Mem. Opp'n Summ. J. Ex. 2 (Letter from Rushing to Dan Harker of 3/18/05).) There is no allegation Nalco employees returned to the premises after the lease expired for any purpose or that Nalco sought to recover the wells or any equipment associated with them. Rather, the only evidence that Nalco continued to occupy the property was via the wells that it had constructed on the Property. Accordingly, Townsend does not mandate a finding that Nalco continued to possess or occupy the property.

Nalco expressly notes that it has not moved for summary judgment on the issue of whether its leaving the wells on the property constitutes possession, but rather claims that EZE's Holdover Claim fails because EZE never acquiesced to Nalco's alleged presence after the lease term. John Rushing ("Rushing"), a representative of EZE, testified at his deposition that EZE would not have given permission for Nalco to install the wells and that EZE objected to the presence of the wells on the Property. (Id. Ex. 3 (Rushing Dep. 45-46).) However, Nalco has not disputed that EZE regularly invoiced Nalco for holdover rent after it unsuccessfully attempted to remove the wells from the Property. After a careful review of the record, the court finds that questions of fact concerning whether Nalco was a holdover tenant preclude summary judgment to either EZE or Nalco on the Holdover Claim. Cf. Nehi Bottling Co., Inc. v. All-American Bottling Corp., 8 F.3d 157, 164 (4th Cir. 1993) (applying Virginia law and concluding that whether a tenant's leaving equipment in an office building constituted holding over was a question of fact for the jury to decide); Niagara Frontier Transp. Auth. v. Euro-United Corp., 757 N.Y.S. 2d 174, 177 (N.Y. App. Div. 2003) ("Whether the failure to remove property at the termination of a lease creates a holdover tenancy is usually a question of fact, to be determined [by weighing numerous factors] . . . ." (Internal quotation marks omitted).) For all of these reasons, the both EZE and Nalco's motions for partial summary judgment on the Holdover Claim are denied.

### 5.  Damages

Finally, Nalco alleges that EZE has failed to prove that it has been damaged by Nalco's actions. EZE's representative, Rushing, admitted that the Western Carolina Sewer Authority ("WCRSA") has committed to paying for the proper abandonment of three of the

five wells. (Def.'s Mem. Supp. Summ. J. Ex. 3 (Rushing Dep. at 34).) Moreover, Nalco contends that EZE has failed to show that the presence of the monitoring wells has interfered with its ability to sell or lease the Property. Nalco notes that EZE's real estate broker testified that only one potential buyer or lessor even noticed the wells, and that the Property's large size was the reason it has not been leased or sold. (Id. 12-13 & Ex. 17 (Kevin Bentley dep. 41).) Accordingly, Nalco asserts that it is entitled to summary judgment on Nalco's claim that the wells have prevented EZE from leasing or selling the Property.

As an initial matter, it is undisputed that EZE paid to have all five wells closed and abandoned and has not been fully reimbursed. More significantly, EZE argues that it has suffered actual damages from the presence of the wells in terms of selling or leasing the Property, citing the deposition of Kevin Bentley ("Bentley"), a real estate agent, for that proposition. Bentley testified that the presence of monitoring wells would present a problem for "[a]ny type of food, any type of plastic, recycling plastic for food operation, any type of dealing with any kind of F.D.A. or medical warehousing or something like. That [sic] I've had some communication with those people before and seen that . . . monitoring wells are a problem." (Pl.'s Mem. Supp. Summ. J. Ex. 7 (Bentley Dep. at 46).) Further, Bentley testified that "it's really hard to get financing for any type of sale with the monitoring wells in place." (Id.) Finally, and most significantly, a potential buyer or tenant, Holcombe, stated in an affidavit that the company he represented intially rejected the Property due solely to the presence of the wells. Accordingly, there is evidence that the wells have interfered with EZE's ability to sell or lease the Property. As such, Nalco's motion for summary judgment

14

on the issue that EZE has failed to show that it was damaged by the wells being on the Property is denied.

It is therefore

**ORDERED** that Nalco's motion for partial summary judgment, docket number 33, is granted in part and denied in part. It is further

**ORDERED** that EZE's motion for partial summary judgment, docket number 36, is granted in part and denied in part.

**IT IS SO ORDERED.**

                                           s/Henry M. Herlong, Jr.
                                           United States District Judge

Greenville, South Carolina
March 30, 2006